# 16-1829-cr

To be argued by:
**SARAH BAUMGARTEL**

---

---

**United States Court of Appeals
for the Second Circuit**

———————————

Docket No. 16-1829-cr

———————————————

UNITED STATES OF AMERICA,

Appellee,

-against-

HERMAN AVERY GUNDY
a/k/a Herman Grundy,

Defendant-Appellant.

———————————————

APPEAL FROM A FINAL JUDGMENT OF THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**BRIEF FOR DEFENDANT-APPELLANT HERMAN AVERY GUNDY**

---

FEDERAL DEFENDERS OF NEW YORK, INC.
APPEALS BUREAU
52 Duane Street, 10th Floor
New York, New York 10007
Tel. No.: (212) 417-8700

Attorney for Defendant-Appellant
**HERMAN AVERY GUNDY**

**SARAH BAUMGARTEL**,
Of Counsel.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

STATEMENT OF JURISDICTION .............................................................................1

QUESTIONS PRESENTED ..........................................................................................1

STATEMENT OF THE CASE ......................................................................................1

    I.      SORNA Generally ....................................................................................2

    II.     The Facts of Mr. Gundy's Case ...........................................................5

    III.    The District Court's Dismissal of the Indictment and the Government's Appeal ...............................................................................7

    IV.    Mr. Gundy's Conviction ........................................................................9

    V.     Standard of Review ...............................................................................10

SUMMARY OF ARGUMENT ....................................................................................10

ARGUMENT .................................................................................................................12

    Point I: Liability for a Violation of 18 U.S.C. § 2250(a) Should Not Be Predicated on Custodial Movement .....................................................................................12

    I.      Interstate Travel is a Critical Component of an Offense Under 18 U.S.C. § 2250(a) ..............................................................................12

    II.     Section 2250(a) was Intended to Criminalize Travel in the Community – Not the Custodial Movement of Mr. Gundy ....................................13

    III.    Custodial Movement is Not Truly Voluntary and Therefore Should Not Form the Basis of Criminal Liability ..........................................19

    Point II: SORNA Improperly Delegates Legislative Authority to the Attorney General .................................................................................................22

CONCLUSION .............................................................................................................24

TABLE OF AUTHORITIES

**Page(s)**

*Abramski v. United States,*
    135 S. St. 2259 (2014) ................................................................................13

*Carr v. United States,*
    560 U.S. 438 (2010) ............................................................................ *passim*

*J.W. Hampton, Jr., & Co. v. United States,*
    276 U.S. 394 (1928)...............................................................................23

*Johnson v. United States,*
    559 U.S. 133 (2010)...............................................................................14

*Jones v. Cunningham,*
    371 U.S. 236 (1963)...............................................................................18

*Mistretta v. United States,*
    488 U.S. 361 (1989) ..........................................................................22, 23

*Panama Refining Co. v. Ryan,*
    293 U.S. 388 (1935) ..........................................................................22, 23

*Perez-Calo v. United States,*
    757 F. Supp. 1 (D.P.R. 1991) .................................................................18

*Reynolds v. United States,*
    132 S. Ct. 975 (2012) ........................................................................4, 23

*Roberts v. Sea-Land Services, Inc.,*
    132 S. Ct. 1350 (2012) ...........................................................................14

*Schechter Poultry Corp. v. United States,*
    295 U.S. 495 (1935) ................................................................................23

*Smith v. United States,*
    508 U.S. 223 (1993) ................................................................................13

*Sturgeon v. Frost,*
    136 S. Ct. 1061 (2016) ............................................................................14

*United States v. Alexander,*
    802 F.3d 1134 (10th Cir. 2015) ..............................................................14

*United States v. Bershchansky,*
    788 F.3d 102 (2d Cir. 2015) ...................................................................10

*United States v. Cabrera-Gutierrez,*
    756 F.3d 1125 (9th Cir. 2013) .................................................... 13

*United States v. CITGO Petrol. Corp.,*
    801 F.3d 477 (5th Cir. 2015) ...................................................... 20

*United States v. Fuller,*
    627 F.3d 499 (2d Cir. 2010) ........................................... 14, 23, 24

*United States v. Gaines,*
    295 F.3d 293 (2d Cir. 2002) ...................................................... 20

*United States v. Gebhart,*
    441 F.2d 1261 (6th Cir. 1971) .................................................. 21

*United States v. Gibson Specialty Co.,*
    507 F.2d 446 (9th Cir. 1974) ..................................................... 21

*United States v. Golom,*
    08 Cr. 310, 2009 WL 2132618 (E.D.N.Y. July 13, 2009) ................ 22

*United States v. Gundy,*
    804 F.3d 140 (2d Cir. 2015) ............................................. 4, 8, 17

*United States v. Guzman,*
    591 F.3d 83 (2d Cir. 2010) ....................................................... 22

*United States v. Kelly,*
    368 F. App'x 194 (2d Cir. 2010) ........................................ 18, 21-22

*United States v. Kopp,*
    778 F.3d 986 (11th Cir. 2015) .................................................. 12

*United States v. Lemoine,*
    546 F.3d 1042 (9th Cir. 2008) .................................................. 18

*United States v. Lott,*
    750 F.3d 214 (2d Cir. 2014) ..................................................... 22

*United States v. Nucci,*
    364 F.3d 419 (2d Cir. 2004) ..................................................... 20

*United States v. Robbins,*
    729 F.3d 131 (2d Cir. 2013) ................................................. 13, 14

*United States v. Rodriguez,*
    416 F.3d 123 (2d Cir. 2005) ..................................................... 20

*United States v. Sanders*,
    622 F.3d 779 (7th Cir. 2010) ........................................................... 12-13

*United States v. White*,
    782 F.3d 1118 (10th Cir. 2015) ........................................................ 13

*Yates v. United States*,
    135 S. Ct. 1074 (2015) ...................................................................... 14

**Statutes**

8 U.S.C. § 1326 ......................................................................................20

18 U.S.C. § 922(g) ......................................................................... 13, 20-21

18 U.S.C. § 1519 .................................................................................... 14

18 U.S.C. § 2250 ............................................................................. *passim*

18 U.S.C. § 3231 ...................................................................................... 1

18 U.S.C. § 3621(b) ............................................................................... 21

18 U.S.C. § 3624(c) ................................................................................. 6

18 U.S.C. § 4082(a) ............................................................................... 21

28 U.S.C. § 1291 ...................................................................................... 1

42 U.S.C. § 16901 ................................................................................. 15

42 U.S.C. § 16913 .........................................................................*passim*

42 U.S.C. § 16914 ................................................................................. 15

42 U.S.C. § 16915 ................................................................................. 16

42 U.S.C. § 16916 ................................................................................. 15

Md. Crim. Law § 3-306 .......................................................................... 5

Md. Code Ann., Crim. Proc. § 11-721 .................................................... 7

N.Y. Correct. Law § 168-t ...................................................................... 7

**Other**

28 C.F.R. § 72.3 ...................................................................................... 4

28 C.F.R. § 570.32 .................................................................................. 6

28 C.F.R. § 570.38(b)(1) ........................................................................ 18

28 C.F.R. § 570.32 .................................................................................. 6

28 C.F.R. § 570.33 .................................................................................. 6

72 Fed. Reg. 8894 ................................................................................... 4

72 Fed. Reg. 30,210................................................................................ 4

iv

73 Fed. Reg. 38,030 .................................................................................. 4

75 Fed. Reg. 81, 849 ................................................................................. 4

U.S. Const. art. I, §§ 1, 8 ........................................................................ 22

**Miscellaneous**

Black's Law Dictionary ............................................................................20

Joshua Dressler, Understanding Criminal Law § 9.02[A] (3d ed. 2001) ...................................20

U.S. Dep't of Justice Office of the Inspector General Audit Division, Audit of the Federal Bureau of Prisons' Furlough Program, Audit Report 10-44 (Sep. 2010) ...........................6

## STATEMENT OF JURISDICTION

Defendant-Appellant Herman Avery Gundy appeals from a final judgment entered in the United States District Court for the Southern District of New York (Hon. J. Paul Oetken) on June 16, 2016, following the oral imposition of sentence on May 27, 2016. A notice of appeal was timely filed on June 8, 2016. This Court has jurisdiction under 28 U.S.C. § 1291. The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231.

## QUESTIONS PRESENTED

(1) Whether a defendant can be guilty of a violation of 18 U.S.C. § 2250(a) of the Sex Offender Registration and Notification Act ("SORNA"), which includes an element requiring interstate travel, where his only movement between states occurred while he was in the custody of the Federal Bureau of Prisons and serving a prison sentence?

(2) Whether SORNA violates the nondelegation doctrine by assigning a core legislative function to the Attorney General without any intelligible guiding principle?

## STATEMENT OF THE CASE

Following a bench trial on stipulated facts, Herman Avery Gundy was convicted of one count of traveling in interstate commerce and thereafter failing to register as required by the Sex Offender Registration and Notification Act, in violation of 18 U.S.C. § 2250(a). The district court sentenced him to time served and five years of supervised release.

The circumstances of Mr. Gundy's case are unique. Section 2250(a) was enacted as a gap-filling provision, intended to target sex offenders who travel between states to evade registration requirements. In Mr. Gundy's case, however, his only interstate movement occurred while he was in the custody of the Federal Bureau of Prisons ("BOP"), completing

a federal prison sentence: he was moved in custody, first, between facilities in Maryland and Pennsylvania and, then, between facilities in Pennsylvania and New York. Before, after and during each move, Mr. Gundy remained in BOP custody. After his release from custody, upon completion of the carceral portion of his sentence, he did not travel between states. Nonetheless, the government charged him with violating § 2250(a) around two months after his release.

There is no dispute that Mr. Gundy could be liable for state criminal offenses for failing to register as required. The only question is whether he should also face federal criminal liability under § 2250(a). Considering the text, history and aims of SORNA, this Court should find that Mr. Gundy's custodial movement is not the sort of "travel" that § 2250(a) was intended to criminalize.

For purposes of preservation, Mr. Gundy also argues that the Court should find SORNA unconstitutional due to its violation of the nondelegation doctrine. Accordingly, the Court should vacate Mr. Gundy's conviction.

## I.   SORNA Generally

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006, codified at 42 U.S.C. § 16901 *et seq.* Title I, the Sex Offender Registration and Notification Act ("SORNA"), was designed to standardize state registries and ensure that sex offenders are adequately monitored while in the community. SORNA comprises multiple components. Among other things, its statutory provisions define the term "sex offender"; compel states to maintain offender registries; describe what information must be in the

2

registries; compel sex offenders to register; detail what registration requires; and establish a national sex offender registry. *See* 42 U.S.C. §§ 16911-16928.

While SORNA established a national registry and certain baseline requirements for each state registry, it generally maintained the traditional state/federal balance in monitoring state sex offenders, leaving primary monitoring and enforcement responsibilities for such offenders to the states themselves. *See Carr v. United States*, 560 U.S. 438, 452 (2010) (finding Congress gave the states "primary responsibility for supervising and ensuring compliance among state sex offenders"). To that end, 42 U.S.C. § 16913(e) states that each jurisdiction "shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year" for offenders who fail to register as required.

To round out this statutory framework, Congress created a gap-filling federal criminal penalty for sex offenders who travel between states to evade registration requirements: 18 U.S.C. § 2250(a). Section 2250(a) provides,

(a) In general. – Whoever –

(1) is required to register under the Sex Offender Registration and Notification Act; . . .

   (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.[1]

At the time of its enactment, Congress did not determine SORNA's applicability to individuals who had previously been convicted of a sex offense (so-called "pre-Act offenders"). Instead, 42 U.S.C. § 16913(d) delegated to the Attorney General the "authority to specify the applicability of the requirements of this title to sex offenders convicted before the enactment of this Act or its implementation in a particular jurisdiction . . . ." SORNA did not apply to pre-Act offenders until the Attorney General validly specified such application. *See Reynolds v. United States*, 132 S. Ct. 975, 984 (2012).

On February 28, 2007, the Attorney General promulgated an interim rule, 72 Fed. Reg. 8894, declaring that SORNA applies "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." Next, on May 30, 2007, the Attorney General issued the proposed Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART") Guidelines to provide "guidance and assistance" to jurisdictions in implementing SORNA. 72 Fed. Reg. 30,210, 30,212. The Attorney General's National Guidelines for Sex Offender Registration and Notification were published on July 2, 2008 and took effect on August 1, 2008. *See* 73 Fed. Reg. 38,030; *see also United States v. Gundy*, 804 F.3d 140, 143 n.2 (2d Cir. 2015). Effective

---

[1] Section 2250 also provides a criminal penalty for sex offenders who are required to register under SORNA "by reason of a conviction under Federal Law…, the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States," or those who travel internationally without registering. *See* 18 U.S.C. §§ 2250(a)(2)(A), 2250(b). These provisions of the statute are not at issue in this appeal.

4

January 28, 2011, the Attorney General issued a final regulation applying SORNA to pre-Act offenders. 28 C.F.R. § 72.3; 75 Fed. Reg. 81,849.

## II. The Facts of Mr. Gundy's Case

On January 7, 2013, defendant Herman Avery Gundy was charged by indictment with one count of violating 18 U.S.C. § 2250(a) for failing to register as required under SORNA. *See* Defendant's Appendix ("A.") 24. Mr. Gundy was convicted of the state sex offense that creates his registration obligation on October 3, 2005. A. 46. That day, he entered an *Alford* plea to Sexual Offense in the Second Degree, in violation of Maryland Criminal Law § 3-306. A. 46, 66, 118. He was sentenced to 20 years in prison, with ten years suspended, and five years of probation. A. 66-68.

At the time, Mr. Gundy was under federal supervised release following a 1994 federal drug conviction in the Eastern District of Pennsylvania. A. 46, 61-63. The Maryland conviction triggered a violation of this federal supervised release, for which he was sentenced to 24 months' prison, to be served consecutively to the Maryland sentence. A. 46, 72.

In 2011, Mr. Gundy completed the carceral portion of his Maryland sentence and was deemed paroled by state authorities. A. 47, 119, 129. He remained in physical custody in Maryland, however, now under the jurisdiction of the Federal Bureau of Prisons ("BOP") for service of his consecutive federal violation sentence. The BOP designated Mr. Gundy to FCI Schuylkill to serve that sentence. In July 2011, he was physically transported from Maryland to FCI Schuylkill, which is in Pennsylvania. A. 47.

After Mr. Gundy was moved to Pennsylvania, the BOP determined that he could serve the final portion of his sentence in a community corrections facility, or halfway house, in New

5

York.[2] A. 47, 75. The BOP ordered Mr. Gundy's transfer via "unescorted commitment[]" to the Bronx Residential Re-Entry Center (RRC) located in New York. A. 77-79. During an approximately eight-hour furlough on July 17, 2012, Mr. Gundy transferred from FCI Schuylkill to the Bronx RRC.[3] A. 48, 77-78. Mr. Gundy was "in the custody of the BOP" at the time he moved between Pennsylvania and New York. A. 218.

Prior to Mr. Gundy's transfer to New York, the BOP completed and transmitted a release notification regarding Mr. Gundy to the New York State Division of Criminal Justice Services Sex Offender Registry. A. 48, 90-91. This notification included Mr. Gundy's projected final release date, his projected Bronx address (where he would reside after his release from the halfway house), and his offense of conviction. A. 48, 90-91.

Mr. Gundy remained at the Bronx RRC until August 27, 2012, when he was released from custody. A. 48, 54, 75. He was approved for release to an address in the Bronx, the same

---

[2] Under current law, the Director of the Bureau of Prisons "shall, to the extent practicable, ensure that a prisoner … spends a portion of the final months" of his or her prison term, "not to exceed 12 months," under "conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility." 18 U.S.C. § 3624(c)(1).

[3] Mr. Gundy did not request this furlough. There are two categories of federal furloughs: transfer furloughs and non-transfer furloughs. *See* 28 C.F.R. § 570.32; *see also* A. 130-31. Transfer furloughs, such as Mr. Gundy's, are limited to those which transfer an inmate to another institution or community confinement. *See* 28 C.F.R. §§ 570.32(a), 570.33(a). By policy, transfer furloughs are initiated by the BOP itself, and not the inmate. *See* BOP Policy Statement 5280.08; *see also* U.S. Dep't of Justice Office of the Inspector General Audit Division, Audit of the Federal Bureau of Prisons' Furlough Program, Audit Report 10-44 (Sep. 2010) at 8 ("Non-transfer furloughs can be initiated by inmates when they submit an application …. Conversely, transfer furloughs are initiated by the BOP. . . . Transfer furloughs to a halfway house are initiated as the BOP prepares for an inmate to leave BOP custody, and the BOP staff evaluate the inmate for placement in a halfway house."). As BOP Policy Statement 5280.08 explains, transfer furloughs are "actually unescorted transfers in which furlough paperwork is completed." Policy Statement at 5. In other words, although inmates must complete "furlough application" paperwork for transfer furloughs, they do not actually request or apply for such furloughs.

address previously provided to the NY Sex Offender Registry. A. 48, 82. He lived in New York and did not travel between states after his release from custody. A. 54-55, 58, 101.

Mr. Gundy was arrested in the Bronx on October 24, 2012 pursuant to a Maryland state probation violation warrant (for not reporting to supervision in Maryland). A. 21. As a result of failing to properly register as a sex offender, Mr. Gundy was potentially subject to a Maryland state probation violation; state criminal charges in Maryland; and state criminal charges in New York.[4]

After his initial arrest for Maryland charges, however, he was brought into federal custody and charged with a violation of 18 U.S.C. § 2250(a). He was presented in the Southern District of New York on December 19, 2012. A. 4-5. The indictment against him was filed on January 7, 2013 and charged that, from in or about August 2012 through October 2012, Mr. Gundy "being an individual required to register" under SORNA "traveled from Pennsylvania to New York and thereafter resided in New York without registering as a sex offender in New York." A. 24.

## III.   The District Court's Dismissal of the Indictment and the Government's Appeal

In the district court, Mr. Gundy moved to dismiss the indictment against him for failure to state an offense under § 2250(a). A. 27. He recognized that he could be subject to state criminal penalties for failing to register as required. A. 136-37, 146. But he argued that the unique circumstances of his case could not give rise to federal criminal liability under § 2250(a).

---

[4] Maryland provides criminal penalties for sex offenders' failure to register as required. *See* Md. Code Ann., Crim. Proc. § 11-721. So too does New York State. *See* N.Y. Correct. Law § 168-t. Based on his places of conviction and residence, Mr. Gundy was required to register, and was therefore subject to penalties for failing to register, in both states. *See* A. 98.

In particular, Mr. Gundy argued that because his only interstate movement occurred while he was in BOP custody with at least thirty days remaining on his sentence, he was not yet "required to register under" SORNA at the time of this movement. A. 34-40. Defendant further asserted that the indictment should be dismissed because criminal liability under § 2250(a) could not be based on custodial movement between states. A. 34-40, 133. He also raised several constitutional challenges to SORNA. A. 40-44.

In a May 22, 2013 memorandum and order, the district court granted defendant's motion to dismiss, based on a finding that Mr. Gundy was not "required to register" within the meaning of § 2250(a)(1) at the time of his alleged interstate travel. A. 157. The district court declined to reach Mr. Gundy's other arguments for dismissal. A. 178.

On May 31, 2013, the government moved for reconsideration of this dismissal. The district court denied the government's motion for reconsideration. A. 180. On September 27, 2013, the government filed a notice of appeal.

Following briefing and argument in the Second Circuit, in an opinion dated September 14, 2015, this Court reinstated the indictment against Mr. Gundy. *See United States v. Gundy*, 804 F.3d 140 (2d Cir. 2015). In brief, the Court concluded that Mr. Gundy was "required to register" within the meaning of § 2250(a)(1) before his interstate movement, and therefore that the indictment should not have been dismissed. *See Gundy*, 804 F.3d at 145. The Court specifically found that Mr. Gundy was required to register as of August 1, 2008, the effective date of the Attorney General's Guidelines applying SORNA to pre-Act offenders. *Id.* at 145. The Circuit declined to reach additional arguments offered by Mr. Gundy in support of dismissal. *See id.* at 148.

## IV.    Mr. Gundy's Conviction

After remand to the district court, Mr. Gundy renewed his motion to dismiss the indictment based on arguments that had not been previously addressed by the district or circuit courts. A. 192. Specifically, defendant renewed his arguments that (i) Mr. Gundy could not be liable for a violation of § 2250(a) because his only alleged interstate travel was while he was in the custody of the BOP; and (ii) SORNA improperly delegates legislative authority to the Attorney General, in violation of the nondelegation doctrine.

On March 2, 2016, the district court held argument and issued an oral ruling rejecting Mr. Gundy's renewed motions to dismiss the indictment. A. 193-207. The court specifically found that Mr. Gundy's movement could give rise to liability under § 2250(a), opining:

> I conclude that the indictment adequately alleges for purposes of Rule 7 that the defendant traveled in interstate commerce. The fact that he did so pursuant to a furlough . . . and that therefore was 'in custody' as a legal matter, does not alter the fact that he actually traveled in interstate commerce. In other words, there is no exception for the custodial status . . . .

A. 205-06.

Mr. Gundy and the government subsequently agreed to conduct a bench trial on stipulated facts. A. 214. As part of their stipulation, the parties agreed that Mr. Gundy had been "advised of his obligation to register as a sex offender" following his Maryland conviction; that he moved from federal prison in Pennsylvania to a Bronx halfway house in July 2012; that his interstate movement occurred while he was "in the custody of the BOP"; and that "after being released from BOP custody" Mr. Gundy "knowingly failed to register as a sex offender, and to keep his registration current, as required by SORNA." A. 216-18.

On March 28, 2016,[5] the district court conducted the bench trial and found Mr. Gundy guilty of violating 18 U.S.C. § 2250(a). A. 229, 241. On May 27, 2016, the court sentenced Mr. Gundy to time served and five years of supervised release, with both standard and special conditions. A. 245, 262-66. The initial judgment was entered on that date and a second, amended judgment was entered on June 16, 2016. A. 269. Mr. Gundy timely filed his notice of appeal on June 8, 2016. A. 275.

**V.    Standard of Review**

This Court reviews de novo any legal conclusions by the district court, including the conclusion that custodial movement can satisfy the elements of 18 U.S.C. § 2250(a). *See, e.g.*, *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015). Mixed questions of law and fact are also subject to de novo review. *Id.* Factual findings are reviewed for clear error. *Id.*

SUMMARY OF ARGUMENT

Mr. Gundy was convicted of one count of failing to register as a sex offender after traveling in interstate commerce, in violation of 18 U.S.C. § 2250(a). In order to be liable for this offense, an individual must be required to register under SORNA; travel interstate; and thereafter fail to register as required. The Second Circuit previously held that Mr. Gundy was first required to register under SORNA in August 2008. Mr. Gundy's only subsequent movement between states occurred while he was in the custody of the Federal Bureau of Prisons, completing a prison sentence.

---

[5] The transcript from this proceeding is incorrectly dated March 28, 2017.

The government claims that criminal liability under § 2250(a) can be based on such custodial movement. Before the district court, the government took the position that someone "literally dragged across state lines by the government" could be prosecuted under § 2250(a). A. 142. However, contrary to the government's arguments, this sort of custodial movement cannot form the basis of criminal liability under § 2250(a).

As the Supreme Court has recognized, interstate travel is more than a mere jurisdictional hook for § 2250(a) offenses – it is the very conduct at which Congress took aim. Given that travel is an important part of the actus reus of the offense, custodial movement should not be sufficient for criminal liability. The text and history of SORNA make clear that this provision was directed at travel undertaken by offenders who were out of custody, residing in the community. Moreover, allowing custodial movement to give rise to criminal liability would undermine the fundamental principle that such liability must be based on voluntary conduct. In contrast, limiting "travel" to movement in the community would comport with the text and history of the statute, without impeding the government's ability to punish delinquent sex offenders, since those who fail to register would still be liable for state criminal offenses. For these reasons, this Court should find that Mr. Gundy's custodial movement cannot give rise to liability under § 2250(a) and should vacate his criminal conviction.

In addition, for purpose of preservation, defendant also asserts that this Court should find that SORNA runs afoul of the constitutional nondelegation doctrine, by improperly empowering the Attorney General to determine the applicability of SORNA to pre-Act offenders such as Mr. Gundy.

ARGUMENT

**POINT I**

**Liability for a Violation of 18 U.S.C. § 2250(a) Should
Not Be Predicated on Custodial Movement**

I.    **Interstate Travel is a Critical Component of an Offense Under 18 U.S.C. § 2250(a)**

In *Carr v. United States*, the Supreme Court held that 18 U.S.C. § 2250(a) has three elements that must be satisfied in sequence. 560 U.S. 438, 446 (2010). To prove that an individual previously convicted of a state sex offense violated this law, the government must show, first, that the defendant is "required to register under" SORNA; second, that he then "travels in interstate or foreign commerce"; and finally, that he thereafter "knowingly fails to register or update a registration as required by" SORNA. *Carr*, 560 U.S at 446.

The second element – interstate travel – is, in the words of the Supreme Court, "the very conduct at which Congress took aim" in enacting § 2250(a). *Carr*, 560 U.S. at 454. Each state has its own criminal laws to punish offenders who remain in the state but fail to register, and SORNA calls for states to maintain and strengthen these laws. *See id.* at 453. SORNA also established a separate federal felony, 18 U.S.C. § 2250(a), to augment these state criminal penalties by specifically targeting offenders who travel between jurisdictions to evade registration requirements. *Id.* (noting § 2250(a) was directed at offenders who "threaten the efficacy of the statutory scheme by traveling in interstate commerce").

In this way, interstate travel is a critical component of the actus reus of the federal crime and a specific aspect of "the harm Congress sought to punish." *Id.*; *see also United States v. Kopp*, 778 F.3d 986, 989 (11th Cir. 2015) (rejecting argument that interstate travel element is merely jurisdictional and finding venue proper where such travel is begun or ended); *United*

*States v. Sanders*, 622 F.3d 779, 783 (7th Cir. 2010) ("[i]nterstate travel by a sex offender is not merely a jurisdictional hook but a critical part of the problem that Congress was attempting to solve"). Indeed, the Supreme Court has explicitly rejected the contention that interstate travel is merely a jurisdictional element of § 2250(a), and instead likened § 2250(a)'s interstate travel element to the possession element of 18 U.S.C. § 922(g). *See Carr*, 560 U.S. at 454.

The fact that interstate travel is an integral component of § 2250(a)'s criminal act has also been emphasized by courts rejecting Commerce Cause challenges to this statute. *See, e.g.*, *United States v. Robbins*, 729 F.3d 131, 134-36 (2d Cir. 2013) (discussing how § 2250(a) liability is triggered by travel across state lines, and therefore finding that the statute does not improperly seek to regulate intrastate matters or inactivity); *United States v. White*, 782 F.3d 1118, 1126 (10th Cir. 2015) (same); *United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1132 (9th Cir. 2013) (same); *Sanders*, 622 F.3d at 782-83 (same).

## II. Section 2250(a) was Intended to Criminalize Travel in the Community – Not the Custodial Movement of Mr. Gundy

Because interstate travel is an essential component of a violation of § 2250(a), the question becomes what "travel" means in this context. Considering the statutory text and legislative history of SORNA, and background principles of criminal law, this Court should find that the requisite travel must be noncustodial and voluntary.

SORNA does not define the term "travels," as used in 18 U.S.C. § 2250(a)(2)(B). To interpret statutory provisions, a court should start with the words' ordinary meaning. *See Smith v. United States*, 508 U.S. 223, 228 (1993). At the same time, a court must consider the context, including surrounding provisions and the structure, history and purpose of the statute. *See, e.g.*, *Abramski v. United States*, 135 S. St. 2259, 2267 (2014). "Statutory language 'cannot be construed

13

in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016) (quoting *Roberts v. Sea-Land Services, Inc.*, 132 S. Ct. 1350 (2012)); *see also Yates v. United States*, 135 S. Ct. 1074, 1084-85 (2015) (stating dictionary definitions of words bear consideration, but that courts must also look at the context for meaning); *Johnson v. United States*, 559 U.S. 133, 139 (2010) ("Ultimately, context determines meaning …."). This general rule of statutory construction has been repeatedly applied to SORNA, whose provisions must be interpreted with reference to one another and the statutory scheme as a whole. *See, e.g.*, *Robbins*, 729 F.3d at 134; *United States v. Fuller*, 627 F.3d 499, 504 (2d Cir. 2010), *rev'd on other grounds by Fuller v. United States*, 132 S. Ct. 1534 (2012); *United States v. Alexander*, 802 F.3d 1134, 1140 (10th Cir. 2015).

In interpreting § 2250(a), this Court should be guided by recent Supreme Court decisions that have emphasized reading statutory words with a view towards their overall context. In *Yates v. United States*, for example, the Supreme Court held that a commercial fisherman could not be liable under a provision of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1519, for disposing of illegally harvested fish to conceal that they had been caught. *See* 135 S. Ct. 1074 (2015). Section 1519 criminalizes altering, destroying, mutilating, or concealing any "tangible object," and the Court conceded that a fish was literally a tangible object. *Id.* at 1079. Nonetheless, based on the statutory context, the Court limited the definition of "tangible object" to one that is used to record or preserve information, and rejected liability for the fisherman. *Id.* at 1079, 1083.

Just as in *Yates*, this Court should find that meaning of "travels" is informed and limited by its statutory context: when § 2250(a) criminalizes "travel[] in interstate or foreign commerce," the overall statutory scheme makes clear that this means community, not custodial, travel.

SORNA's focus on sex offenders who have been released from custody and are at large in the community runs throughout the statutory text, beginning with its Declaration of Purpose, 42 U.S.C. § 16901. Section 16901 states that the purpose of SORNA is "to protect the public from sex offenders and offenders against children," and proceeds to list several attacks on children that motivated the law. This immediately makes the intent of the law clear: the public and children are already adequately protected, and sex offenders well monitored, while the offenders are in custody. But offenders have not been sufficiently monitored while out of custody. All of the listed attacks were outside of a custodial setting, perpetrated by offenders released into the community.

This focus on offenders outside of custody is also apparent in the text of 42 U.S.C. § 16913. This section requires an offender to register in each jurisdiction where he resides, works, or is a student – plainly contemplating individuals outside of prison who can live, work and study in different locations. Similarly, in 42 U.S.C. § 16914(a), offenders are required to provide the address of each place they will reside; each location where they will work; and the license plate number for any car they drive. Offenders are also required to periodically appear in person to keep their registration current, *see* 42 U.S.C. §§ 16913(c), 16916. Such personal appearances would be impossible for incarcerated offenders.

Other statutory provisions further emphasize SORNA's focus on offenders who are in the community, and not in custody. Section 16915(a) sets forth the "registration period" for different levels of offenders, and specifically excludes "any time the sex offender is in custody or civilly committed." Under § 16941, any "sex offender who violates a sex offender registration requirement shall be deemed a fugitive," subject to apprehension by the U.S. Marshals. Such a design would be absurd if the offender were already in federal custody.

In sum, the text of SORNA uniformly evinces an intent that the law's registration requirements and other provisions apply to offenders who are in the community, and not those who are still in custody.

Moving beyond the statutory text, the legislative history of SORNA is also oriented towards sex offenders who have been released from custody and are at large in the community. The Congressional record focuses on "missing" or lost sex offenders; sex offenders whose movements cannot be tracked; or offenders who "slip[ped] through the cracks." *See* H.R. Rep. 109-218, pt. 1 (Sep. 9, 2005) (discussing concern regarding missing and lost sex offenders and noting that offenders typically go missing when they move from one state to another);[6] 152 Cong. Rec. H5705 01 (daily ed. Jul. 25, 2006) (statement of Rep. Rahm Emmanuel) ("[T]oo many sex offenders are able to slip through the cracks and become lost to law enforcement officials."); *see also Carr*, 560 U.S. at 454-55 (noting government's contention that SORNA's

---

[6] This House Judiciary Committee Report was cited by the Supreme Court in *Carr*. It relates to H.R. 3132, a predecessor bill to that which was ultimately enacted as SORNA.

underlying purpose is to assist in "tracking down missing sex offenders"). These concerns clearly relate to offenders in the community, not those who are in state or federal custody.

The Attorney General's SMART Guidelines and guidance regarding SORNA's implementation also emphasize SORNA's focus on offenders in the community. As the Attorney General observed, the registration requirements

> generally presuppose the case of a sex offender who is free in the community. Where a sex offender is confined, the public is protected against the risk of his reoffending in a more direct way, and more certain means are available for tracking his whereabouts. Hence, SORNA does not require that jurisdictions apply the registration procedures applicable to sex offenders in the community during periods in which a sex offender is in custody . . . .

73 Fed. Reg. 38,068; *see also* 73 Fed. Reg. 38,045 ("In their most basic character, the registration aspects of these programs are systems for tracking sex offenders following their release into the community.").

The Attorney General also stated that an offender's "required registration period begins to run upon release from custody." *Id.* It would be bizarre if an offender could commit a key component of his federal failure to register offense – interstate travel – before his required registration period had even begun.

Considering this context and background, it is clear that § 2250(a)'s interstate travel requirement was not intended to be met by the custodial movement of prisoners like Mr. Gundy. Instead, when that provision of SORNA references travel, it is intended to apply only to the travel of individuals who have already been released into the community.

This Court previously held that Mr. Gundy was "required to register" under SORNA within the meaning of § 2250(a)(1) beginning in August 2008. *See United States v. Gundy*, 804 F.3d 140, 145 (2d Cir. 2015). There is no dispute that Mr. Gundy's only movement between

states after this date occurred while he was in the custody of the Federal Bureau of Prisons, completing his prison sentence: in 2011, Mr. Gundy was moved by the BOP from Maryland to Pennsylvania, and in July 2012, he was moved by the BOP from Pennsylvania to New York. In July 2012 specifically, Mr. Gundy was transferred from federal prison in Pennsylvania to a BOP-contracted community correctional facility in New York for completion of his sentence.

Mr. Gundy's July 2012 transfer was via an eight-hour furlough, but his custodial status remained the same. *See* A. 218 (stipulating that Mr. Gundy was "in the custody of the BOP" during his July 2012 movement); A. 79-80 (explaining furloughed inmate remains in custody of the Attorney General, serving a term of imprisonment); *see also* 28 C.F.R. § 570.38(b)(1) (same); *United States v. Kelly*, 368 F. App'x 194, 197 (2d Cir. 2010) (upholding escape conviction for defendant who failed to report to halfway house and explaining that defendant's "confinement had been extended by a brief furlough to include the route from federal prison in Fort Dix, New Jersey, to the halfway house in Rochester"); *United States v. Lemoine*, 546 F.3d 1042, 1046 n.2 (9th Cir. 2008) (stating individual transferred to RRC remains in Bureau of Prisons custody); *Perez-Calo v. United States*, 757 F. Supp. 1, 2 (D. P.R. 1991) (same).[7] Mr. Gundy reported to the halfway house as required; he therefore was not out of custody until the completion of his sentence and actual release in August 2012.

---

[7] A transfer furlough is just one of several situations where a prisoner is in federal custody, serving a sentence, even though he is not subject to particular physical restraints. For example, many federal prisoners serve a portion of their sentence in low security BOP facilities where they have relative freedom of movement throughout the day, or are permitted to leave prison grounds as part of a work program. Although these individuals are not physically restrained by handcuffs or shackles, there is no question that they are in custody. *See, e.g.*, *Kelly*, 368 F. App'x at 197 ("custody need not entail physical restraint") (citing *Jones v. Cunningham*, 371 U.S. 236 (1963)).

In light of the surrounding statutory provisions, and SORNA's history and purpose, the Court should find that this sort of custodial movement is not sufficient to satisfy § 2250(a)(2)(B). The statutory context makes clear that § 2250(a) was intended to target travel by offenders who are at large in the community – not those who are still in federal custody completing a prison sentence. As described above, every statutory provision of SORNA is focused on monitoring and tracking sex offenders who have been released from custody. This focus is also apparent from the legislative history and the Attorney General's implementing guidelines. Reading the term in context, "travel" does not encompass custodial movement such as Mr. Gundy's prison transfers.

Nor should there be any concern that limiting § 2250(a) in this way will somehow prevent criminal prosecution of individuals who fail to register. As the Supreme Court has recognized, § 2250(a) is merely one provision of SORNA's statutory framework, targeting one specific problem. *See Carr*, 560 U.S. at 455-56. Individuals, like Mr. Gundy, who remain continuously in one state while residing in the community are nonetheless subject to state criminal penalties if they fail to properly register. *Cf. id.* at 453 (noting that individuals whose actions are not covered by § 2250(a) may still be prosecuted by states).

## III. Custodial Movement is Not Truly Voluntary and Therefore Should Not Form the Basis of Criminal Liability

Even apart from the statutory text and intent of SORNA, this Court should find that custodial movement cannot give rise to criminal liability because such movement is not truly voluntary.

With extremely limited exceptions, criminal liability must be premised on voluntary action.[8] This is a principle so fundamental that most criminal laws do not specify the requirement of voluntary action – courts treat the requirement as implicit. *See* Joshua Dressler, Understanding Criminal Law § 9.02[A] (3d ed. 2001); *see also* Black's Law Dictionary (defining "actus reus" as the "voluntary act or omission, the attendant circumstances, and the social harm caused by a criminal act, all of which make up the physical components of a crime"). The requirement of voluntary action is one of the basic principles of criminal common law, the background against which Congress legislates. *See United States v. Nucci*, 364 F.3d 419, 423 (2d Cir. 2004). As a result, courts routinely read voluntariness requirements into federal criminal statutes. *See, e.g.*, *United States v. Rodriguez*, 416 F.3d 123, 125 (2d Cir. 2005) (requiring voluntary reentry attempt under 8 U.S.C. § 1326, though term "voluntary" is not in statute); *see also United States v. CITGO Petroleum Corp.*, 801 F.3d 477, 492-93 (5th Cir. 2015) (explaining that criminal liability requires a voluntary act, which should not be confused with separate mens rea requirements).

To take one example, although 18 U.S.C. § 922(g) does not explicitly state that possession of a firearm must be voluntary, that requirement is consistently read into the statute. *See United States v. Gaines*, 295 F.3d 293, 302 (2d Cir. 2002) (approving jury instructions that required finding defendant possessed a firearm "purposely and voluntarily"). Similarly, courts have read a voluntariness requirement into statutes that require interstate travel or the

---

[8] The district court and the government construed defendant's argument as concerning the mens rea required to violate the statute, but voluntariness goes to the actus reus, not mens rea, required for criminal liability.

use of interstate facilities. *See, e.g.*, *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974) (stating that Travel Act requires proof of the voluntary use of interstate facilities); *United States v. Gebhart*, 441 F.2d 1261, 1263 (6th Cir. 1971) (requiring proof of voluntary travel in interstate commerce or the voluntary use of the facilities of interstate commerce).

Considering this fundamental tenet of criminal law, this Court should find that a critical component of the conduct comprising a § 2250(a) violation – interstate travel – must be voluntary. As discussed, in *Carr*, the Supreme Court rejected the government's argument that interstate travel was merely a jurisdictional element, and instead analogized travel to the possession element of 18 U.S.C. § 922(g). This strongly implies that, like the possession of a firearm, interstate travel must be knowing and voluntary to give rise to § 2250(a) liability.

Here Mr. Gundy's movement across state lines was not voluntary travel, because he was under the custody and control of the Federal Bureau of Prisons. The BOP has the power to designate prisoners to particular facilities; it determines where prisoners will physically serve their sentences and orders transfers. *See* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment. . . . [and] may at any time, . . . direct the transfer of a prisoner from one penal or correctional facility to another."). The BOP transferred Mr. Gundy between facilities during the completion of his sentence. As a prisoner, he was not at liberty to refuse any movement ordered by the BOP. And if Mr. Gundy had failed to report to the halfway house as ordered, he would have been guilty of a crime. *See, e.g.*, 18 U.S.C. § 4082(a) ("[t]he willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape"); *Kelly*, 368 F. App'x at 197 (affirming

escape conviction of defendant who failed to report to halfway house during transfer furlough); *United States v. Golom*, 08 Cr. 310 (DLI), 2009 WL 2132618, at \*1 (E.D.N.Y. Jul. 13, 2009) (involving escape charge for prisoner who failed to report to halfway house).

Accordingly, because Mr. Gundy's custodial movement cannot be considered truly voluntary, it should not give rise to liability under § 2250(a).

**POINT II**

**SORNA Improperly Delegates Legislative Authority to the Attorney General**

Defendant recognizes that this Court has ruled that Congress did not violate the nondelegation doctrine by permitting the Attorney General to determine SORNA's applicability to individuals convicted of sex offenses before SORNA's enactment. *See United States v. Lott*, 750 F.3d 214, 220 (2d Cir. 2014); *United States v. Guzman*, 591 F.3d 83, 92 (2d Cir. 2010). This issue has not yet been decided by the Supreme Court, however, and defendant raises this argument for purposes of preservation.

The authority to legislate is entrusted solely to Congress. U.S. Const. Art. I §§ 1, 8. "Congress manifestly is not permitted to abdicate or transfer to others the legislative functions" with which it is vested. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935). This "nondelegation doctrine is rooted in the principle of separation of powers . . . ." *Mistretta v. United States*, 488 U.S. 361, 371 (1989).

While the nondelegation doctrine does not prevent Congress from "obtaining the assistance of its coordinate Branches," it can do so only if it provides clear guidance. *Id.* at 372-73. "So long as Congress 'shall lay down by legislative act an intelligible principle to which

22

the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not forbidden delegation of legislative power.'" *Id.* at 372 (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928)).

In both *Panama Refining Co.* and *Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), the Supreme Court held that Congress had unconstitutionally authorized the Executive to make laws because "Congress had failed to articulate any policy or standard that would serve to confine the discretion of the authorities to whom Congress delegated power." *Mistretta*, 488 U.S. at 374, n.7.

Similarly, in SORNA Congress failed to articulate any policy to guide the Attorney General in determining the law's applicability to pre-Act offenders. Congress gave no guidance as to how the Attorney General should exercise this delegated authority. *See United States v. Fuller*, 627 F.3d 499, 509 (2d Cir. 2010) (Raggi, J., concurring), *vacated on other grounds by Fuller v. United States*, 132 S. Ct. 1534 (2012).

Because of this lack of an intelligible principle, jurists have questioned whether Congress could constitutionally leave it to the Attorney General to decide whether and how SORNA applied to pre-Act offenders, such as Mr. Gundy. For example, in his dissenting opinion in *Reynolds v. United States*, 132 S. Ct. 975, 986 (2012), Justice Scalia questioned whether Congress could constitutionally take such action, noting that this "sail[s] close to the wind with regard to the principle that legislative powers are nondelegable."

Similarly, Judge Raggi's concurring opinion in *United States v. Fuller* (which was vacated on other grounds following the Supreme Court's decision in *Reynolds*) opined that this delegation would in fact be impermissible. *See* 627 F.3d at 508. Judge Raggi described how the

23

power to determine the scope of a statute was a core legislative function, particularly with respect to statutes exposing individuals to criminal liability. *Id.* at 509. She added that she could "not see that Congress provided any intelligible principle in the statute" and that this failure to provide such principle is particularly egregious where Congress "delegated to the Attorney General, the very officer charged with executive power to enforce the criminal laws, the legislative power unilaterally to pronounce the scope of a law with criminal consequences." *Id.* at 510-12.

Because SORNA grants the Attorney General unfettered discretion to determine who is subject to criminal legislation without an "intelligible principle" to guide him, it plainly violates the nondelegation doctrine.

CONCLUSION

For the reasons described above, this Court should find that Mr. Gundy's custodial movement does not create liability under 18 U.S.C. § 2250(a) and should vacate his conviction. This Court should also find SORNA's delegation of legislative power to the Attorney General unconstitutional.

Dated: New York, New York
      November 21, 2016

                                      Respectfully submitted,
                                      Federal Defenders of New York, Inc.

                          By: /s/ Sarah Baumgartel
                                Sarah Baumgartel, Esq.
                                Attorney for Herman Avery Gundy
                                52 Duane Street, 10th Floor
                                New York, New York 10007
                                Tel.: (212) 417-8772